Brian L. NESBITT, Appellant,

v.

DIRECTOR OF REVENUE,
Defendant–Respondent.

No. ED 74049.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 15, 1998.

Henry T. Vogt, III, Clayton, for appellant.

Evan Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

LAWRENCE E. MOONEY, Judge.

This is an appeal of the suspension of appellant's driving privileges. The Director of Revenue (Director) suspended Brian L. Nesbitt's (Driver) driving privileges pursuant to Section 302.505, RSMo 1994[1] for driving with a blood alcohol content of at least .10 percent. The trial court upheld the suspension. Driver appeals on the basis that the trial court erred in admitting the blood alcohol content test results. We reverse.

### FACTS

On June 1, 1998, Driver was involved in a one-car accident on Interstate 44. A Missouri State Highway Patrol Trooper (Trooper) arrived on the scene and spoke with Driver as he was being prepared for transportation to St. John's Mercy Hospital. Trooper smelled a strong odor of intoxicants on Driver's breath and noticed Driver was having difficulty speaking.

Shortly after Driver arrived at the hospital, Trooper advised him of his rights under Missouri's implied consent law and Driver consented to his blood being drawn at the hospital. Trooper then directed a hospital employee, Gerry L. Keese (hospital employee), to draw blood from Driver. Trooper seized the blood and delivered it for analysis to the lab. Analysis indicated that Driver's blood alcohol content was .10 percent.

The Director suspended Driver's driving privileges pursuant to Section 302.505, and the suspension was upheld after an administrative hearing. Driver filed a petition for a trial de novo in the circuit court.

At trial, Director introduced Driver's blood alcohol test results as evidence. Director offered Trooper's testimony and various business records to lay a foundation for admission of the blood test results. Director did not call the hospital employee to testify.

Driver objected to the admission of the test results, arguing that Director failed to lay a proper foundation for their admission. The trial court found the Director had laid a proper foundation, admitted the results and affirmed Driver's suspension.

### ANALYSIS

The trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the court erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

On appeal, Driver contends that the trial court erred in upholding Driver's suspension. Driver argues that the trial court erred in admitting the results of the blood test because the Director failed to lay a proper foundation for its admission. We agree.

In a license revocation or suspension proceeding, the Director must establish by a preponderance of the evidence that: 1) the authorities had probable cause to arrest petitioner for driving while intoxicated, and 2) at the time of arrest; petitioner's blood alcohol content was at least .10 percent. *White v. Director of Revenue*, 946 S.W.2d 277, 279 (Mo.App. W.D.1997). In order to prove the petitioner's blood alcohol content, the Director must prove that the blood test was administered in accordance with Section 577.029, RSMo which, in pertinent part, states as follows:

> A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request or

---

1. All statutory references are to RSMo 1994.

direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood, unless such medical personnel, in his good faith medical judgment, believes such procedure would endanger the life or health of the person in custody.... In withdrawing the blood for the purpose of determining the alcohol content thereof, only a previously unused and sterile needle and sterile vessel shall be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. A non-alcoholic antiseptic shall be used for cleansing the skin prior to venapuncture [sic]....

The Western district of this court has held there should be absolute and literal compliance with the technical requirements of Sec. 577.029. *State v. Setter*, 763 S.W.2d 228, 230 (Mo.App. W.D.1988).

■ On appeal, Driver contends the trial court erred in admitting the blood test results because Director failed to lay a proper foundation. Specifically, Driver argues that Director failed to establish that: 1) the hospital employee was a trained medical technician; 2) a sterile needle was used; 3) a sterile container was used; and 4) a non-alcoholic antiseptic was used.

Since the Director failed to meet the first requirement of Section 577.029, we need not discuss whether Director met its burden with respect to the other three requirements. We only address Driver's first contention regarding the hospital employee's qualifications.

At trial, Director did not call the hospital employee as a witness. Instead, Director relied only on the testimony of Trooper and two business records to establish that the hospital employee was a "trained medical technician."

Trooper testified that he'd seen the hospital employee draw blood "many times" before at the hospital. Director also introduced several documents, marked as Exhibit A, under the business records exception to the rule excluding hearsay evidence. Sections 490.680, 490.692. Included in Exhibit A were two documents purporting to establish the qualifications of the hospital employee. The first was a document printed on hospital letterhead entitled "Verification of Specimen Collection" which stated that the hospital employee was "an authorized collector of blood specimens at St. John's Mercy Hospital," and was signed by the hospital employee and Trooper. The second was a "Blood Transmittal Slip" form which contains the hospital employee's name and title as "Gerry L. Keese, phlebotomist." Trooper testified that he completed this form, not the hospital employee. Neither the hospital employee nor Trooper signed this second form. Director did not present any other evidence of the hospital employee's qualifications.

Director argues that "the court of appeals recognized that a phlebotomist is authorized under the law to collect blood specimen samples." In support of this contention, Director cites *Moore v. Director of Revenue*, 811 S.W.2d 848 (Mo.App. S.D.1991) in which a phlebotomist testified in a license suspension trial as to the procedure he followed in drawing blood from appellant. However, the facts of *Moore* are readily distinguishable from those of the case at bar. In *Moore*, the hospital employee was available at trial and testified to his qualifications as a phlebotomist; thus, the question of his qualifications was never at issue. In this case, the hospital employee did not testify as to her qualifications as a "trained medical technician." The question of the hospital employee's qualifications was always at issue in this case.

Director, in his brief, also contends that he may prove a prima facie case for the admission of the blood test results on business records alone, citing *Helton v. Director of Revenue*, 944 S.W.2d 306, 309 (Mo.App. W.D. 1997). However, Director's reliance on *Helton* is misplaced. *Helton* holds that the Director may prove a prima facie case for the admission of breath analyzer test results, not blood alcohol content test results. Furthermore, the *Helton* court noted that appellant driver waived any foundational objection to the admission of the test results. The case at bar involves a blood alcohol test, not a breath analyzer test, and Driver's attorney made both written and oral objections to the lack of foundation laid by Director for the admission of the test results. More impor-

tantly, whether Director may prove a prima facie case for admission of blood test results by business records alone is beside the point; the fact is that Director did not do so here.

Missouri courts have not previously addressed the level of proof necessary to satisfy Section 577.029 of the statute. We can turn to other jurisdictions with similar statutes for guidance. As the proponent of the blood alcohol test, the state has the initial burden to establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to insure reliability. *Olson v. Commissioner of Public Safety,* 513 N.W.2d 491, 492 (Minn.App.1994). A trained phlebotomist working for a hospital or for physicians is competent to withdraw blood for blood alcohol tests. *Olson,* 513 N.W.2d at 492; *State v.Bingham,* 921 S.W.2d 494, 495 (Tex.App.1996); *Thurman v. State* 172 Ga. App. 16, 321 S.E.2d 780, 781–82 (Ga.App. 1984); *People v. Randle,* 183 Ill.App.3d 146, 131 Ill.Dec. 697, 538 N.E.2d 1253, 1254 (Ill. App.); *Speers v. Commonwealth,* 828 S.W.2d 638, 640 (Ky.1992).

Generally, these courts have found the statute satisfied where the phlebotomist and/or the phlebotomist's supervisor testified to her training, duties, and experience, *Bingham,* 921 S.W.2d at 495; *Olson,* 513 N.W.2d at 492; *Thurman,* 321 S.E.2d at 781; *Gooch v. State,* 155 Ga.App. 708, 272 S.E.2d 572, 575 (Ga.App.1980) or where the hospital records custodian produced its personnel records which documented the phlebotomist's training and education. *Peek v. State,* 235 Ga. App. 693, 509 S.E.2d 358 (Ga.App.1998).

The language of Section 577.029 expressly requires blood be drawn by a "licensed physician, registered nurse, or trained medical technician." It is this person that the legislature has charged with carrying out the proper withdrawal and preservation of a blood specimen that is often determinative evidence to a trier of fact. Further, the legislature requires that the person be capable of exercising "good faith medical judgment" and acting "in strict accord with accepted medical practices." There is no evidence to support a finding that the hos-

pital employee was, at the least, a "trained medical technician." The trooper's testimony that the employee drew blood in the past, was "authorized" by the hospital to do so, and carried the title of "phlebotomist" is not evidence that she was a "trained medical technician" as required by Section 577.029.

For the above reasons, we conclude the Director failed to meet its burden of establishing by a preponderance of the evidence the hospital employee was qualified as a "trained medical technician." Since the Director did not prove that the hospital employee was qualified, the Director failed to establish a proper foundation for the admission of Driver's blood alcohol content test results as required by Section 577.029. Therefore, the trial court erred in admitting the test results. Thus, there was no substantial evidence in support of the trial court's judgment suspending Driver's driving privileges and the judgment is reversed.

SIMON, P.J., and CRANE, J., concur.