## S99G0592. PEEK v. THE STATE.
### (527 SE2d 552)

BENHAM, Chief Justice.

Arrested and charged with driving under the influence of alcohol, Earl Peek agreed to submit to a state-administered blood test. His blood was drawn by Ha Bolia, a Southern Regional Medical Center employee. At trial, the State was permitted to introduce as a business record[1] a "computer print-out" of an "employee education cumulative report" to show that Bolia was a phlebotomist.

Peek was convicted of DUI, and the Court of Appeals affirmed, holding that the "employee education cumulative report" was admissible under the business record exception to the hearsay rule to prove that Bolia was qualified to draw Peek's blood. *Peek v. State,* 235 Ga. App. 693 (509 SE2d 358) (1998). We granted certiorari and posed this question:

> Whether the "employee education cumulative report" of the phlebotomist who drew Peek's blood satisfied the State's burden of proving that the person who drew Peek's blood was qualified to do so. See OCGA § 40-6-392 (a) (2) and (e).

When the State introduces evidence of a chemical test to prove that a defendant was driving under the influence, it has the burden of demonstrating compliance with the statutory, foundational requirements. *Munda v. State,* 172 Ga. App. 857, 858 (324 SE2d 799) (1984). The State also has the burden of proving the qualifications of any person who draws blood at the request of a law enforcement officer. *Carr v. State,* 222 Ga. App. 776, 777 (476 SE2d 75) (1996). These requirements are " 'consistent with the statutory mandate of

---

[1] The business record exception is the accepted means of introducing breath-testing device certificates and radar device certificates. *Brown v. State,* 268 Ga. 76, 78 (485 SE2d 486) (1997).

the General Assembly that the use of such tests in criminal trials shall be subject to the strictest protections . . . .' " *Munda v. State*, supra at 858 (quoting *State v. Johnston*, 160 Ga. App. 71, 73 (286 SE2d 47) (1981), aff'd, 249 Ga. 413 (291 SE2d 543) (1982)).

In OCGA § 40-6-392 (a) (2), the legislature limited the class of persons qualified to draw blood for the purpose of determining the alcoholic content of the blood to physicians, registered nurses, laboratory technicians, emergency medical technicians, and "other qualified person[s]." The legislature then established an acceptable method of demonstrating at trial, without the testimony of the person who drew the blood,[2] the qualification of the person who drew blood from a person charged with DUI, providing in OCGA § 40-6-392 (e) that

> [a] certification by the office of the Secretary of State or by the Department of Human Resources that a person was a licensed or certified physician, physician's assistant, registered nurse, practical nurse, medical technologist, medical laboratory technician, or phlebotomist at the time the blood was drawn shall be admissible into evidence for the purpose of establishing that such person was qualified to draw blood as required by this Code section.

Just as breath-testing device certificates and radar device certificates have "the primary purpose of serving as a memorandum of the accuracy of the equipment," (*Brown v. State*, supra), the certification provided for in OCGA § 40-6-392 (e) has the primary purpose of serving as a reliable memorandum of the qualification of an individual to draw blood for the purpose of testing its alcohol content. The statute provides only one method for showing the qualification of the person drawing blood, and that method does not include privately held records related to employee training.

The Court of Appeals has expanded the scope of permissible proof of the qualifications of drawers of blood in DUI cases, most notably in the present case and in *Dean v. State*, 232 Ga. App. 390 (1) (a) (501 SE2d 895) (1998), which held that proof from hospital records and the testimony of one other than the person who drew the blood to be sufficient. This move to expand the acceptable means of proving the qualifications of those who draw blood had its genesis in *Harden v. State*, supra. There, the Court of Appeals held that the hearsay testimony of a law enforcement officer who had no personal

---

[2] "[T]he State may call as a witness the person who withdrew the blood and have that person testify as to his or her qualifications. [Cits.]" *Harden v. State*, 210 Ga. App. 673 (1) (436 SE2d 756) (1993).

knowledge of the qualifications of the drawer of blood was not sufficient to meet the State's burden of proving those qualifications. However, on the way to that correct ruling, the *Harden* opinion stated that the State's "burden may be satisfied in at least two ways." Id. Although the opinion did not suggest what other ways would suffice, and offered no authority or rationale for the notion that there might be more than two ways, the Court of Appeals cited *Harden* for that proposition in *Brahm v. State*, 230 Ga. App. 407 (1) (497 SE2d 240) (1998), and then expanded upon it: "The words 'at least' imply that other ways exist, and the case law makes clear that the State's burden may be carried in other ways. See, e.g., *Bazemore v. State*, 225 Ga. App. 741 (484 SE2d 673) (1997)." That statement in *Brahm* is doubly ironic: *Bazemore* did not serve as an example of another way the State might carry its burden because the evidence establishing the qualifications of the drawer of blood in *Bazemore* was a certification from the Department of Human Resources, one of the methods specifically authorized by OCGA § 40-6-392 (e); and the discussion in *Brahm* of ways in which qualifications might be proved was gratuitous because the evidence there, a law enforcement officer's testimony that the person who drew blood in that case was a person who regularly drew blood at that hospital, was ruled not to be sufficient. We are thus presented with the unfortunate situation of a gratuitous phrase used in *Harden* being quoted in *Brahm* to expand the scope of methods of proving qualification, without any need to do so in that case.

Because the established methods of memorializing the accuracy of breath-testing devices and radar devices and the qualification of persons who draw blood impinge to some degree on the constitutional right of confrontation (see *Brown*, supra), the courts must resist the temptation to expand the class of acceptable methods. The legislature has provided a safeguard in the form of a specific certification by the State of the qualifications of the person who drew blood. The establishment of those qualifications by the testimony of the person who drew blood also provides a traditional safeguard, the opportunity to test the truth of the testimony by cross-examination. Given the potential impact of these matters on the right to confrontation, we conclude that the only acceptable methods of proving the qualification of the person who drew a defendant's blood are the certificate provided for in OCGA § 40-6-392 (e), introduced by means of the business records exception to the hearsay rule (*Brown*, supra), and the testimony of the person who drew the blood.

The method by which the State attempted to show qualification in the present case and in *Dean v. State*, supra, has none of the safeguards mentioned above, neither the opportunity to cross-examine nor the assurance that the State has certified, in accordance with a

specific statutory provision therefor, the qualifications of the person who drew the defendant's blood. Consequently, the trial court's admission of the evidence offered to prove the phlebotomist's qualifications was error and the Court of Appeals erred in affirming Peek's conviction. In addition, *Dean v. State*, supra, is overruled, and to the extent *Brahm* and *Harden* suggest that other methods of proof may be employed, they are also overruled.

*Judgment reversed. All the Justices concur, except Thompson and Hines, JJ., who concur specially.*

THOMPSON, Justice, concurring specially.

I must reject the analysis and holding of the majority. Until now, no case has hamstrung the State by requiring it to prove the qualifications of a phlebotomist in *only* one of two ways. This case does just that, without justification.

In a DUI case, the State has the burden of proving the qualifications of any person who draws blood at the request of a law enforcement officer.[3] The State may meet this burden in *at least two* ways: (1) call the person who drew the blood to testify about his qualifications;[4] or (2) pursuant to OCGA § 40-6-392 (e), introduce a "certificate" from the Secretary of State or the DHR showing that the person was licensed or certified.

OCGA § 40-6-392 (e) does not *require* the state to introduce a certificate from the Secretary of State or the DHR to prove a phlebotomist's qualifications; it merely provides that such a certificate is *admissible*.[5] Thus, the Court of Appeals has consistently ruled that the qualifications of a person who draws blood may be proved "in at least two ways," clearly implying — and even stating — that the State can carry its burden in other ways as well.[6] I see no reason for this Court to now hold that the State may meet its burden in two ways only. More specifically, I see no reason why the State should not be allowed to prove the qualifications of a phlebotomist under OCGA § 24-3-14, the business record exception to the hearsay rule.[7]

As I see it, the qualifications of a phlebotomist can be proven with a business record upon the laying of a proper foundation without violating a defendant's right of confrontation. So long as such a record is a mere memorial of the fact that a phlebotomist is qualified

---

[3] *Carr v. State*, 222 Ga. App. 776, 777 (476 SE2d 75) (1996).

[4] See *Thurman v. State*, 172 Ga. App. 16, 17 (1) (321 SE2d 780) (1984).

[5] *Bazemore v. State*, 225 Ga. App. 741, 742 (484 SE2d 673) (1997).

[6] See, e.g., *Dean v. State*, 232 Ga. App. 390 (501 SE2d 895) (1998); *Brahm v. State*, 230 Ga. App. 407 (497 SE2d 240) (1998); *Bazemore v. State*, supra; *Carr v. State*, supra; *Harden v. State*, 210 Ga. App. 673 (436 SE2d 756) (1993).

[7] See *Dean v. State*, supra (qualifications of phlebotomist may be proved through hospital business records and testimony of supervisor).

to draw blood, it may be admitted into evidence.[8] Accordingly, I disagree with the holding of the majority.

I concur specially, however, because the State failed to lay a proper foundation for the admission of the "employee education cumulative report" as a business record. There was no testimony as to "when" the entries on the report were made. Thus, the State failed to establish that the entries on the report were made at the time of the event or within a reasonable time thereafter.[9]

I am authorized to state that Justice Hines joins in this special concurrence.

DECIDED MARCH 6, 2000.

*Monte K. Davis, George A. Stein,* for appellant.
*Keith C. Martin, Solicitor, Kimberly V. Gross, Assistant Solicitor,* for appellee.

---

[8] See *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997) (breath-testing device certificates may be introduced into evidence under the business record exception to the hearsay rule without violating a defendant's right of confrontation under the Federal and State constitutions).

[9] *Suarez v. Suarez*, 257 Ga. 102, 104 (355 SE2d 649) (1987). See *Mullinax v. State*, 231 Ga. App. 534, 535 (499 SE2d 903) (1998) (certificates for breath-testing machine are inadmissible where trooper does not know if certificates were made contemporaneously with testing).